**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

FILED ORL INTAKE- USBC 17 SEP 2026 PM1:19

| | |
|---|---|
| In re:<br><br>MATTHEW ALLEN SARGEANT, SR.,<br><br>Debtor. | Case No. 6:26-bk-05708-TPG<br>Chapter 13 |
| MATTHEW ALLEN SARGEANT, SR.,<br><br>Plaintiff,<br><br>v.<br><br>SANTANDER CONSUMER USA, INC.<br>d/b/a CHRYSLER CAPITAL, and<br>MAC HAIK AUTOMOTIVE GROUP,<br><br>Defendants. | Adversary No. 6:26-ap-00150-TPG |

**PLAINTIFF'S FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Matthew Allen Sargeant, Sr., appearing pro se, alleges as follows:

Plaintiff files this First Amended Complaint once as a matter of course under Fed. R. Civ. P. 15(a)(1)(B), made applicable by Fed. R. Bankr. P. 7015, following service of Defendants' Rule 12 motions.

## TABLE OF AUTHORITIES AND PROPOSITIONS

| Authority | Rule / Proposition Applied | Complaint |
|---|---|---|
| **CASES** | | |
| Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1371 (11th Cir. 1997) | Rule 9(b): plead the precise statements, speaker, time/place, misleading nature, and result. | Rule 9(b) Particularity |
| Durham v. Business Management Associates, 847 F.2d 1505, 1511 (11th Cir. 1988) | Rule 9(b) particularity must be applied consistently with notice pleading. | Rule 9(b) Particularity |
| Miller v. Kemira, Inc. (In re Lemco Gypsum, Inc.), 910 F.2d 784, 788 (11th Cir. 1990) | Binding Eleventh Circuit "conceivable effect" test for bankruptcy related-to jurisdiction. | Jurisdiction and Venue |
| Santander Consumer USA, Inc. v. Brown (In re Brown), 746 F.3d 1236 (11th Cir. 2014) | Section 506(a)(2) replacement-value framework for personal property in Chapter 13. | Count VI - Claim / Lien |
| Formosa Plastics Corp. USA v. Presidio Engineers & Contractors, Inc., 960 S.W.2d 41, 47-49 (Tex. 1998) | Texas fraud elements; promise of future performance is actionable if made with no intent to perform; fraud damages. | Count I - Fraud |
| Spoljaric v. Percival Tours, Inc., 708 S.W.2d 432, 434-35 (Tex. 1986) | Fraudulent intent may be inferred from subsequent conduct; nonperformance alone is insufficient but may combine with circumstantial evidence. | Count I - Fraud |
| Zorrilla v. Aypco Construction II, LLC, 469 S.W.3d 143, 153 (Tex. 2015) | Fraudulent inducement is a species of common-law fraud sharing the traditional fraud elements. | Count I - Fraud |
| In re Morgan Stanley & Co., 293 S.W.3d 182, 187-89 (Tex. 2009) | Whether an agreement was ever formed because a signature was forged or unauthorized is a threshold formation issue. | Count IV - Disputed $1,466 Product |
| **STATUTES AND REGULATIONS** | | |
| 11 U.S.C. § 502(a)-(b)(1) | Allowance/disallowance of claims; disallowance to extent claim is unenforceable under agreement or applicable law. | Count VI - Claim / Lien |
| 11 U.S.C. § 506(a)(1)-(2) | Determines secured status by collateral value and provides replacement-value rule for individual-debtor personal property. | Count VI - Claim / Lien |
| 28 U.S.C. §§ 1334, 157 | Bankruptcy jurisdiction and allocation of core/non-core matters. | Jurisdiction and Venue |

| | | |
|---|---|---|
| 16 C.F.R. § 433.2 | FTC Holder Rule; holder takes consumer credit contract subject to seller claims and defenses, with affirmative-recovery cap stated in the required notice. | Count V - Holder Rule |
| Tex. Bus. & Com. Code § 17.45(4)-(5) | DTPA definitions of consumer and unconscionable action/course of action. | Count II - DTPA |
| Tex. Bus. & Com. Code § 17.46(b)(5), (12), (24) | Enumerated false/misleading acts invoked: characteristics/approval representations; rights/obligations representations; intentional failure to disclose known information to induce transaction. | Count II - DTPA |
| Tex. Bus. & Com. Code § 17.50(a)-(b) | DTPA producing-cause liability and available consumer remedies, including enhanced damages where statutory mental-state requirements are met. | Count II; Damages |
| Tex. Bus. & Com. Code § 17.565 | DTPA two-year limitations period, discovery provision, and 180-day statutory extension in specified circumstances. | Timeline ss |
| **RULES** | | |
| Fed. R. Bankr. P. 3007(b) | Claim objection may be included in an adversary proceeding that also demands Rule 7001 relief. | Count VI - Claim / Lien |
| Fed. R. Bankr. P. 7001(b), (g), (i) | Adversary procedure for lien validity/extent, equitable relief, and related declaratory relief. | Jurisdicti on; Count VI |
| Fed. R. Bankr. P. 7008 | Requires jurisdictional allegations and statement of consent/non-consent to final bankruptcy-court adjudication. | Jurisdicti on and Consent |
| Fed. R. Bankr. P. 7009 / Fed. R. Civ. P. 9(b) | Fraud pleading with particularity. | Rule 9(b) Particular ity |
| Tex. Fin. Code § 348.1015 | Retail installment contract may not be conditioned on subsequent assignment; statute expressly creates no private right of action. Cited only to distinguish origination from later assignment. | Originati on / Financin g Sequence |
| Fed. R. Civ. P. 15(a)(1)(B) / Fed. R. Bankr. P. 7015 | Permits one amendment as a matter of course within 21 days after service of a Rule 12(b), (e), or (f) motion. | Procedur al basis for amendme |

| | | |
|---|---|---|
| | | nt |
| M.D. Fla. Bankr. L.R. 9004-1(a)-(b) | Requires party designation in the title and, when a jury demand is contained in a pleading, requires the title to state the jury demand. | Caption / title; Jury Demand |

*The authorities above are tied to the specific propositions for which they are cited in the pleading. Factual allegations remain tied to the exhibits identified in the Exhibit Index; legal authorities are used for the governing rule, not as substitutes for factual proof.*

## I. NATURE OF THE ACTION

1. This adversary proceeding arises from the September 2023 sale and financing of a used 2014 Dodge Challenger, VIN 2C3CDYAG0EH281803, through Georgetown Mac Haik Dodge Chrysler Jeep Ram in Georgetown, Texas.

2. The case is not based upon a later reconstruction of events. Plaintiff possesses a contemporaneous documentary record consisting of the retail installment contract, lender adverse-action and conditional-credit decisions, a Customer DEAL UNWIND Agreement, a Vehicle Service Contract reflecting a $1,466 charge, a disputed signature on that service-contract document, and a preserved text-message thread with Mac Haik representative Austin.

3. The central factual issue is the difference between what Plaintiff was repeatedly told about the status and disposition of the transaction and what the objective financing record shows was occurring during the same period.

4. The lender record begins before execution of the September 6, 2023 retail installment contract. A Chrysler Capital adverse-action notice dated September 30, 2023 reflects a credit decision dated September 5, 2023 on an application submitted through Georgetown Mac Haik Dodge Chrysler Jeep Ltd., Reference No. 152501420, stating that Chrysler Capital was unable to approve the terms of the credit request.

5. Other lender records identify multiple submissions by or through Georgetown Mac Haik around the same transaction, including Global Lending Services decisions dated September 5, 2023 and Stellantis Financial Services adverse decisions dated September 18 and October 2, 2023.

6. After execution of the September 6 contract, Mac Haik representatives nevertheless continued telling Plaintiff that replacement financing and an unwind of the original transaction were being worked, that a first payment was necessary to permit the unwind, that dealership personnel

continued working the replacement transaction after Plaintiff made that payment, and that the old deal was 'getting completely canceled.'

7. After the represented unwind failed, Austin made a further contemporaneous statement concerning the funding of the original transaction, stating that it was difficult to cancel loans after funding and: 'I don't know why the bank ever transferred the money in the first place.'

8. Plaintiff alleges that this later statement is material because it acknowledges that the original transaction had been funded, distinguishes funding from cancellation, and reflects uncertainty by a Mac Haik representative about why the lender funded the transaction.

9. Plaintiff does not presently allege, without discovery, that Santander participated in Mac Haik's alleged misrepresentations concerning the unwind. Plaintiff alleges that Santander's underwriting, funding, and dealer-communication records are necessary to determine when the September 6 transaction was approved, when it was funded, what changed from the September 5 application or requested terms, what documents accompanied the ultimately successful submission, and whether Santander had any involvement in the represented unwind or first-payment condition.

10. A separate but related issue concerns the $1,466 ancillary/service-contract product. Plaintiff objected to that product contemporaneously, Mac Haik's representative responded that he would determine whether the bank required it, the DEAL UNWIND document stated that warranties or aftermarket products were to be cancelled, yet the $1,466 remained embedded in the financed obligation.

11. The service-contract document associated with that product, Vehicle Service Contract No. 343481260972, lists Tina Cheatham as Purchaser and Plaintiff as Co-Purchaser and contains a

signature purporting to be Tina Cheatham's. Tina Cheatham denies making that signature and denies authorizing anyone to sign it for her.

12. Santander now asserts a bankruptcy claim arising from the transaction. Plaintiff therefore seeks adjudication of the seller-based claims and defenses, the Holder Rule consequences of those claims and defenses, the enforceability and amount of Santander's claim, and the validity and extent of Santander's asserted lien.

## II. JURISDICTION, VENUE, AND CONSENT

13. Plaintiff is the debtor in In re Matthew Allen Sargeant, Sr., Case No. 6:26-bk-05708-TPG, Chapter 13, pending in the United States Bankruptcy Court for the Middle District of Florida, Orlando Division.

14. This Court has jurisdiction under 28 U.S.C. §§ 1334 and 157. The proceeding includes an objection to the allowance and amount of Santander's proof of claim, requests concerning the validity and extent of Santander's asserted lien, and claims whose resolution could alter the debtor-creditor relationship and administration of the Chapter 13 estate. See 28 U.S.C. §§ 1334(b), 157(b)(2)(B), (K).

15. The claims against Mac Haik are at least 'related to' the Chapter 13 case because their resolution could conceivably affect the allowance, amount, and treatment of Santander's claim and the assets and liabilities administered in the bankruptcy case. See Miller v. Kemira, Inc. (In re Lemco Gypsum, Inc.), 910 F.2d 784, 788 (11th Cir. 1990).

16. This adversary proceeding is authorized to the extent applicable by Fed. R. Bankr. P. 7001(a), (b), (g), and (i), and Plaintiff may include an objection to Santander's claim in this adversary proceeding under Fed. R. Bankr. P. 3007(b). See Fed. R. Bankr. P. 7001(b), (g), (i); Fed. R. Bankr. P. 3007(b).

17. Venue is proper under 28 U.S.C. § 1409 because the related Chapter 13 case is pending in this District.

18. Pursuant to Fed. R. Bankr. P. 7008, Plaintiff consents to the Bankruptcy Court's entry of final orders and judgment to the fullest extent permitted by Article III, 28 U.S.C. § 157, and applicable law. See Fed. R. Bankr. P. 7008.

## III. PARTIES

19. Plaintiff Matthew Allen Sargeant, Sr. is the Chapter 13 debtor and purchaser/co-purchaser obligated on the retail installment transaction at issue.

20. Defendant Santander Consumer USA, Inc., doing business as Chrysler Capital ('Santander'), is the assignee, holder, servicer, claimant, or entity asserting rights under the retail installment obligation and lien.

21. Defendant Mac Haik Automotive Group ('Mac Haik'), including the entity operating Georgetown Mac Haik Dodge Chrysler Jeep Ram through which the transaction occurred, was the retail seller and originating dealer.

22. Austin was a Mac Haik representative who communicated directly with Plaintiff by text concerning the financing, the proposed replacement transaction, the alleged unwind, the first-payment issue, and the eventual failure of the unwind.

23. Michael Kinney and other Mac Haik personnel were identified in the contemporaneous communications as persons involved in the financing and proposed replacement transaction.

24. Tina Cheatham was the original cosigner/co-purchaser on the September 6 transaction. She is not named as a plaintiff in this action.

## IV. ORIGINATION AND THE SEPTEMBER 5-6 FINANCING SEQUENCE

25. Before the September 6 transaction, Plaintiff submitted credit information in connection with obtaining a vehicle and understood that he had approximately $9,000 in purchase power, together with $2,000 available for a down payment.

26. Plaintiff ultimately returned to Mac Haik and agreed to purchase the 2014 Dodge Challenger with Tina Cheatham as cosigner.

27. On September 5, 2023, Chrysler Capital made an adverse credit decision concerning an application submitted through Georgetown Mac Haik. The later-issued Chrysler Capital notice identifies September 5 as the date of the credit decision and states that Chrysler Capital was unable to approve the terms of the credit request.

28. Two Global Lending Services notices likewise reflect separate September 5, 2023 decisions on applications sourced from Georgetown Mac Haik, Application IDs 30608552 and 30602505. Each states that GLS could not offer credit on the terms originally requested but could approve on specified terms or conditions, and that those terms or conditions were communicated to the application source.

29. On September 6, 2023, Plaintiff and Tina Cheatham executed the retail installment contract, Plaintiff paid $2,000, and Plaintiff took possession of the Vehicle.

30. The retail installment contract reflects, among other things, an amount financed of approximately $17,849.13, an APR of approximately 24.10%, a finance charge of approximately $16,397.67, and scheduled total payments of approximately $34,246.80.

31. Plaintiff was not told before signing that Chrysler Capital had made the September 5 adverse decision described above.

32. After execution, additional lender activity continued. A Stellantis Financial Services notice dated September 18, 2023, Application No. 601217897, identifies Mac Haik Dodge Chrysler

Jeep (Georgetown) as the dealer and states that Stellantis was unable to approve the application at that time.

33. A second Stellantis Financial Services notice dated October 2, 2023, Application No. 601219015, again identifies Mac Haik Dodge Chrysler Jeep (Georgetown) as the dealer and again states that Stellantis was unable to approve the application at that time.

34. The lender documents therefore show financing submissions and adverse or conditional decisions both immediately before and after the September 6 contract.

35. Texas Finance Code § 348.1015 provides that a motor-vehicle retail installment contract may not be conditioned on its subsequent assignment to a holder and expressly does not create a private right of action. Plaintiff cites the provision only to distinguish the seller's retail installment contract from the later assignment process; Plaintiff does not assert a standalone claim under § 348.1015.

36. Plaintiff alleges that the identity of each application, the version of the proposed transaction submitted, the applicant and cosigner information used, the amount requested, down payment, term, APR, ancillary products, stipulations, lender conditions, dealer responses, and final disposition are matters capable of objective proof from the dealer and lender records.

## V. THE $1,466 ANCILLARY PRODUCT AND DISPUTED SIGNATURE

37. After execution, Plaintiff discovered that the transaction included an ancillary Vehicle Service Contract priced at $1,466.

38. Plaintiff did not knowingly request or authorize that product as part of the transaction and promptly objected to it.

39. During the contemporaneous text communications, Plaintiff specifically questioned the warranty/service-contract charge and requested that it be removed.

40. Austin responded that he would determine whether the product was required by the bank and would find out.

41. That response establishes that the product was disputed while the financing and represented unwind remained active issues, rather than being challenged for the first time years later.

42. Vehicle Service Contract No. 343481260972, administered by Enterprise Financial Group, Inc., reflects a Contract Price of $1,466 and lists Tina Cheatham as Purchaser and Plaintiff as Co-Purchaser.

43. Plaintiff did not sign Tina Cheatham's name on that document and did not authorize anyone to sign for her.

44. Tina Cheatham denies making the signature appearing as hers on the service-contract document and denies authorizing anyone else to execute it on her behalf.

45. Plaintiff alleges that neither he nor Tina knowingly authorized the $1,466 product as represented by that document.

46. The $1,466 charge was nevertheless included in the financed transaction and therefore increased the amount financed and the economic burden of the loan.

47. Plaintiff seeks a determination of the legal effect and enforceability of the disputed service-contract obligation and any portion of Santander's claim derived from it.

## VI. THE CUSTOMER DEAL UNWIND

48. After Plaintiff challenged the transaction and sought correction, Mac Haik provided a Customer DEAL UNWIND Agreement to Plaintiff and Tina Cheatham.

49. The DEAL UNWIND document states that the purchase was being returned to Georgetown Mac Haik Dodge Chrysler Jeep Ram and that warranties or aftermarket products included in the deal were to be cancelled.

50. Plaintiff and Tina each signed and returned copies in connection with the proposed unwind. Tina's preserved copy is part of Plaintiff's documentary record.

51. The copy preserved by Tina does not bear an acceptance signature by an authorized Mac Haik representative. Plaintiff therefore pleads contract enforcement and promissory/equitable theories in the alternative rather than assuming that the absence of a dealer countersignature is legally immaterial.

52. Regardless of whether the DEAL UNWIND document itself became an enforceable bilateral contract, it is contemporaneous written evidence of the specific transaction Mac Haik proposed and of the represented disposition of the existing purchase and aftermarket products.

53. Plaintiff continued cooperating with the dealership's proposed solution because he understood from the document and the continuing communications that the existing transaction was being unwound and replaced.

## VII. THE CONTEMPORANEOUS TEXT-MESSAGE CHRONOLOGY

54. Plaintiff preserved a complete text-message thread with Austin. Plaintiff recognizes the conversation, the participants, the subject matter, and the chronology and can authenticate the communications from personal knowledge.

55. On September 19, 2023, Austin communicated with Plaintiff concerning the proposed financing process and identified Michael Kinney as handling the matter.

56. On September 24, 2023, Austin stated that the bank had not sent the money and that the dealership would get the matter done with Plaintiff's mother the following day, while stating that the dealership still wanted to sell Plaintiff the Vehicle.

57. In that same represented replacement-financing process, Austin told Plaintiff that the dealership would work the transaction using Plaintiff's mother as the proposed replacement co-borrower.

58. Plaintiff alleges that Mac Haik obtained or requested Plaintiff's mother's identifying and credit information and represented that the information would be used to pursue replacement financing. Plaintiff does not presently know whether Mac Haik actually submitted her information to any lender, because the submission history and dealer-platform records are in Defendants' possession.

59. If discovery shows that no lender application was ever submitted using Plaintiff's mother despite those contemporaneous representations, the absence of any submission would constitute objective evidence bearing directly on the truthfulness of Mac Haik's representation that a replacement transaction using her credit was actually being worked.

60. Plaintiff repeatedly asked whether the new transaction was actually being pursued and what he should do concerning the existing transaction.

61. Austin continued communicating about replacement financing rather than telling Plaintiff that no replacement transaction was being pursued.

62. During the same period, Plaintiff continued questioning the proposed new terms, APR, payment, treatment of the prior payment and down payment, and removal of the disputed ancillary product.

63. On or about October 25, 2023, Austin stated that Michael Kinney was trying to help but that if Plaintiff did not make the first payment, there was nothing Michael could do.

64. Plaintiff understood the statement as a representation that making the first payment was a condition of completing the proposed unwind/replacement transaction.

65. Plaintiff made that payment. A contemporaneous October 27 message records that the payment had been made the preceding day.

66. After the payment, Austin did not tell Plaintiff that the original transaction had simply become final. On or about October 30, Austin stated that Michael was working on the deal and requested the Vehicle's mileage.

67. In the same sequence, Austin stated that his understanding was that the old deal was 'getting completely canceled.'

68. Austin further represented that Plaintiff would have the Vehicle for approximately three months, would only have to make the one payment, and that Plaintiff's $2,000 down payment should go toward the new deal.

69. Plaintiff relied upon those representations by continuing to cooperate with Mac Haik rather than treating the original transaction as finally resolved and independently pursuing a different remedy.

70. Shortly thereafter, Austin stated that he had asked Michael and that the lender was no longer willing to work with the dealership to unwind the loan because Plaintiff's first payment had been late.

71. The significance of the first-payment representation is not that no payment could legally become due on an existing contract before an unwind was consummated. The significance is that Mac Haik represented the payment as a prerequisite to accomplishing the unwind, Plaintiff made it in reliance on that representation, and Mac Haik then continued representing that the replacement transaction was being worked and that the old deal was being completely canceled.

72. After the unwind was denied or abandoned, Plaintiff expressed his belief that Michael had never intended to complete it. Austin responded by discussing the difficulty of canceling a loan after funding and stated: 'I don't know why the bank ever transferred the money in the first place.'

73. That statement is inconsistent with a simple narrative in which the September 6 transaction was unremarkably approved, funded, and complete from the outset. At minimum, it creates a concrete factual issue concerning the timing and basis of the eventual funding.

74. Plaintiff does not ask the Court to infer Santander complicity merely from Austin's reference to 'the bank.' Plaintiff instead seeks identification of the institution Austin meant and production of the objective funding and dealer-communication records capable of establishing what actually occurred.

## VIII. THE OBJECTIVE FINANCING RECORD AND THE REPRESENTATION GAP

75. The documentary record establishes a sequence that can be tested without speculation: Chrysler Capital made an adverse decision dated September 5; the RISC was executed September 6; additional lender submissions and adverse decisions continued after execution; Mac Haik represented that replacement financing and an unwind were being worked; Plaintiff made the first payment after being told it was necessary to the unwind; Mac Haik continued representing that the old deal was being canceled; the unwind then failed; and the original obligation, including the disputed $1,466 product, survived.

76. The presently available evidence does not establish why Chrysler Capital's September 5 adverse decision ultimately resulted in Santander holding or enforcing the September 6 transaction.

77. The fact that the RISC was ultimately assigned or held by Santander does not itself answer these questions. Assignment establishes the endpoint of the financing chain; it does not establish what applications were submitted, which alternatives were available, what terms changed, what dealer compensation attached to each option, or whether the represented replacement-financing process actually occurred.

78. The presently available evidence likewise does not establish whether Santander knew of, participated in, rejected, or was entirely unaware of Mac Haik's represented unwind and replacement-financing process.

79. Those matters are peculiarly within Defendants' institutional records and are susceptible to targeted discovery, including the complete application and resubmission history, underwriting conditions and overrides, approval, assignment and funding timestamps, final funding package, dealer reserve and funding records, and communications concerning cancellation, repurchase, unwind, re-contracting, or replacement financing.

80. Mac Haik's own ordinary-course records provide the dealer-side mirror of the same funding event. Plaintiff seeks contracts-in-transit or unfunded-deal reports, deal-jacket/DMS status, lender-remittance and receivable-clearance entries, F&I funding and gross-profit records, applicable inventory or floorplan entries, salesperson deal-credit or commission records, and any rollback, chargeback, delayed-credit, or funding-exception entries.

81. Those records can independently establish when Mac Haik treated the September 6 transaction as economically final. If the deal remained pending, unfunded, subject to conditions, or uncleared after September 6, the records should identify when that status ended and what event caused it to clear.

82. If Santander contends that its September 5 adverse decision was followed by approval on September 6 or later, its records should identify the exact approval, assignment-acceptance, satisfaction-of-stipulations, funding-authorization, and funds-transfer dates, together with every hold, exception, resubmission, rehash, or funding condition between those events.

83. If Mac Haik contends that it genuinely requested an unwind, or that a lender imposed a first-payment prerequisite, the dealer and lender records should identify the date, recipient, method, response, source of the condition, and reason the represented unwind failed.

84. If either Defendant contends that the $1,466 product was authorized or lender-required, the original authorization, enrollment record, execution metadata, funding documentation, and any lender requirement are directly relevant.

85. Plaintiff further seeks lender callback sheets, buy-rate and contract-rate information, dealer reserve or participation, acquisition fees or discounts, and all alternative or conditional approvals, to identify what financing alternatives existed and why the ultimately funded transaction was selected.

86. Plaintiff does not presently allege that a specific lower APR was approved or that Mac Haik necessarily selected the September 6 transaction because it generated greater compensation. Those remain testable factual questions raised by the multiple lender submissions, the represented replacement financing, and the survival of the 24.10% transaction with the disputed ancillary product.

87. Plaintiff pleads these evidentiary gaps for discovery, not as an allegation that Santander necessarily participated in Mac Haik's challenged representations.

## IX. RULE 9(b) PARTICULARITY

88. The principal fraud allegations against Mac Haik are pleaded with particularity under Fed. R. Civ. P. 9(b), made applicable by Fed. R. Bankr. P. 7009. See Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1371 (11th Cir. 1997).

89. WHO: Mac Haik personnel communicating with Plaintiff, principally Austin, together with Michael Kinney and other dealership personnel identified through the transaction records.

90. WHAT: representations concerning financing status, the existence and progress of replacement financing, the proposed unwind, the asserted first-payment prerequisite, continuing work on the replacement transaction after payment, complete cancellation of the old deal, application of the $2,000 down payment, and the disposition of the disputed $1,466 product.

91. WHEN: from September through November 2023, including the September 19 and September 24 communications, the October 25 first-payment representation, the October 26 payment, the October 30-31 representations that Michael was working the deal and that the old

deal was being completely canceled, and the subsequent communication denying the unwind and discussing why the bank had funded the transaction.

92. WHERE AND HOW: through Mac Haik's Georgetown, Texas dealership operations and direct electronic communications with Plaintiff concerning the specific Vehicle and financing transaction.

93. WHY MATERIAL: the representations affected whether Plaintiff believed the existing debt was being canceled, whether replacement financing existed, whether he should make a payment, whether he should continue providing financial information and cooperating with Mac Haik, and whether he should immediately pursue independent remedies.

## COUNT I - COMMON-LAW FRAUD / FRAUDULENT MISREPRESENTATION AGAINST MAC HAIK

94. Plaintiff incorporates the preceding paragraphs.

95. Mac Haik, through its representatives, made material representations concerning existing facts and the present status of the transaction, including whether financing and replacement-financing activity was occurring, whether the existing transaction was being unwound, and whether the dealership was continuing to work a replacement transaction.

96. Mac Haik also made promises of future performance, including completion of the represented unwind and replacement transaction.

97. Plaintiff alleges that the representations were false or materially misleading when made, or were made recklessly without knowledge of their truth, and that any promises of future performance actionable as fraud were made without a present intention to perform.

98. Texas law permits fraudulent intent concerning a promise of future performance to be proved by circumstantial evidence, including subsequent conduct, although nonperformance alone is

insufficient. See Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc., 960 S.W.2d 41, 47-48 (Tex. 1998); Spoljaric v. Percival Tours, Inc., 708 S.W.2d 432, 434-35 (Tex. 1986).

99. Plaintiff alleges circumstantial evidence beyond mere nonperformance, including the objective lender-decision chronology, the continuing representations after adverse lender activity, the first-payment representation and post-payment assurances, the written DEAL UNWIND document, the survival of the disputed product, and Austin's later statement questioning why the bank funded the transaction; whether any lender submission using Plaintiff's mother actually occurred despite Mac Haik's representations that such financing was being worked; and, if discovery reveals a materially more favorable available approval, the reasons Mac Haik selected or preserved the more expensive transaction.

100. Mac Haik intended or reasonably expected Plaintiff to rely upon the representations in deciding whether to make the payment, continue cooperating with the dealership, provide additional information, and refrain from treating the original transaction as finally resolved.

101. Plaintiff actually relied on the representations and suffered pecuniary loss as a result.

102. Plaintiff seeks actual damages, rescission or other equitable relief where available, and all other relief permitted by Texas law.

## COUNT II - TEXAS DECEPTIVE TRADE PRACTICES ACT AGAINST MAC HAIK

103. Plaintiff incorporates the preceding paragraphs.

104. Plaintiff is a consumer under the Texas Deceptive Trade Practices-Consumer Protection Act because he sought and acquired the Vehicle and related services by purchase.

105. Plaintiff alleges that Mac Haik engaged in false, misleading, or deceptive acts and an unconscionable course of action in connection with the sale and financing, including material representations and omissions concerning the status and disposition of the transaction, the represented unwind and replacement financing, and the disputed ancillary product, including any

representation that replacement financing using Plaintiff's mother was actively being pursued if no such lender submission was in fact made.

106. Plaintiff further alleges that Mac Haik took advantage of Plaintiff's inability to see or verify its internal lender-submission and funding processes to a grossly unfair degree by continuing to direct Plaintiff's conduct through representations about financing and unwind activity that Plaintiff could not independently verify.

107. Plaintiff does not contend that charging a high APR, receiving dealer compensation, or choosing among lawful financing offers is independently unlawful. The challenged conduct is the alleged deception, concealment, unauthorized ancillary product, and misleading description of financing and unwind activity; any evidence concerning dealer compensation or a rejected lower-cost approval is relevant to motive, intent, causation, and the truth or falsity of the representations.

108. The challenged conduct was a producing cause of Plaintiff's economic damages.

109. Plaintiff alleges that the conduct was committed knowingly and, to the extent established by discovery and trial, intentionally, and seeks enhanced damages only to the extent Tex. Bus. & Com. Code § 17.50 authorizes them.

110. Plaintiff seeks economic damages and any other damages or equitable relief recoverable under the DTPA and supported by admissible evidence.

## COUNT III - BREACH OF DEAL UNWIND AGREEMENT; ALTERNATIVE PROMISSORY/EQUITABLE RELIEF AGAINST MAC HAIK

111. Plaintiff incorporates the preceding paragraphs.

112. Mac Haik supplied the Customer DEAL UNWIND Agreement, which described return of the purchase and cancellation of warranties and aftermarket products.

113. Plaintiff signed and returned the document and cooperated with the represented unwind process.

114. To the extent the Court determines that the DEAL UNWIND document and the parties' conduct created an enforceable agreement, Mac Haik breached it by failing to complete the represented unwind and by failing to cancel the disputed ancillary product as represented.

115. Because the preserved copy does not contain an acceptance signature by an authorized Mac Haik representative, Plaintiff pleads in the alternative that Mac Haik made clear promises concerning the unwind and cancellation of the existing deal and ancillary products, that Plaintiff foreseeably and substantially relied on those promises, and that injustice can be avoided only by appropriate promissory or equitable relief to the extent Texas law permits.

116. Plaintiff seeks damages and equitable relief according to the legal theory sustained by the evidence.

**COUNT IV - DECLARATORY RELIEF CONCERNING THE $1,466 ANCILLARY OBLIGATION**

117. Plaintiff incorporates the preceding paragraphs.

118. An actual controversy exists concerning whether the $1,466 Vehicle Service Contract was validly authorized and whether amounts attributable to that product are enforceable against Plaintiff or properly included in Santander's bankruptcy claim.

119. Tina Cheatham denies signing the service-contract document or authorizing anyone to sign it for her, and Plaintiff denies authorizing the product as represented by that document.

120. Questions concerning whether a person assented to a contract and whether a purported signature was authorized are formation and enforceability questions. See In re Morgan Stanley & Co., 293 S.W.3d 182, 187-88 (Tex. 2009).

121. Plaintiff seeks a declaration concerning the validity and legal effect of the disputed service-contract document and disallowance, credit, restitution, reformation, or other appropriate relief for any portion of the financed obligation found not legally enforceable.

**COUNT V - FTC HOLDER RULE CLAIMS AND DEFENSES AGAINST SANTANDER**

122. Plaintiff incorporates the preceding paragraphs.

123. The retail installment contract contains the notice required by the FTC Holder Rule, 16 C.F.R. § 433.2.

124. By operation of that notice and applicable law, Santander as holder is subject to claims and defenses arising from the seller transaction that Plaintiff could assert against Mac Haik, subject to the Holder Rule's limitations, including its limitation on affirmative recovery.

125. Plaintiff does not allege that the Holder Rule makes Santander the speaker of Austin's statements or automatically establishes independent Santander fraud.

126. Plaintiff instead asserts against Santander the seller-based claims and defenses preserved in the consumer credit contract, including defenses affecting enforceability and the amount of the obligation and affirmative recovery to the extent authorized by the Holder Rule and governing law.

127. Plaintiff reserves separate claims based on Santander's own conduct only to the extent discovery establishes an independent factual and legal basis for such claims.

**COUNT VI - OBJECTION TO SANTANDER'S CLAIM AND DETERMINATION OF LIEN VALIDITY AND EXTENT**

128. Plaintiff incorporates the preceding paragraphs.

129. Santander filed or asserts a proof of claim arising from the retail installment transaction in the approximate amount of $18,082.22, including an asserted secured amount of approximately $14,625.

130. Under 11 U.S.C. § 502(b)(1), a claim is disallowed to the extent it is unenforceable against the debtor or property of the debtor under the agreement or applicable law.

131. Plaintiff objects to Santander's claim to the extent it includes the disputed $1,466 product, charges or interest attributable to an unenforceable obligation, amounts affected by any rescission, restitution, offset, recoupment, DTPA relief, fraud remedy, or Holder Rule defense, or any other amount not enforceable under applicable law.

132. Plaintiff requests a complete transactional accounting sufficient to reconcile the proof of claim, including original principal, every payment, every credit, finance charges, late charges, repossession or recovery charges if any, ancillary-product charges and credits, refunds, payoff calculations, and the basis for the petition-date balance.

133. Plaintiff further requests a determination of the validity and extent of Santander's asserted lien to the extent that lien secures amounts found unenforceable or is otherwise affected by the Court's adjudication of the underlying transaction.

134. Vehicle valuation under 11 U.S.C. § 506(a) and Fed. R. Bankr. P. 3012 may be determined by the procedure the Court deems proper. The Eleventh Circuit recognizes § 506(a)(2)'s replacement-value framework for personal property in Chapter 13. Santander Consumer USA, Inc. v. Brown (In re Brown), 746 F.3d 1236 (11th Cir. 2014).

135. Plaintiff does not ask the Court to treat Santander's asserted $14,625 secured amount as a separate debt in addition to the total claim. Plaintiff understands it as Santander's asserted secured portion of the claim and seeks determination of the allowed secured and unsecured amounts under the Bankruptcy Code and applicable law.

136. Pursuant to Fed. R. Bankr. P. 3007(b), this claim objection is included in the adversary proceeding because Plaintiff also seeks relief of the kind specified in Fed. R. Bankr. P. 7001.

## X. TIMELINESS AND ALTERNATIVE LIMITATIONS ALLEGATIONS

137. Plaintiff alleges that the common-law fraud and written-contract claims are timely under the applicable Texas limitations periods because this action was commenced within four years of the 2023 transaction and representations.

138. As to the Texas DTPA, Tex. Bus. & Com. Code § 17.565 requires suit within two years after the deceptive act or within two years after the consumer discovered or, exercising reasonable diligence, should have discovered the occurrence of the deceptive act.

139. Plaintiff alleges that November 2023 disclosed that the represented unwind would not occur, but did not disclose the internal lender-submission history, the significance of the September 5 Chrysler Capital decision, the basis and timing of the eventual funding, or whether the represented lender conditions and replacement-financing activity actually existed.

140. Plaintiff alleges that he did not discover the documentary pattern forming the basis of the DTPA claim until he later assembled and compared the lender decisions, contract documents, and contemporaneous communications, and that the question of when reasonable diligence should have disclosed the occurrence is fact dependent.

141. Plaintiff pleads the statutory discovery provision in § 17.565 and, only to the extent supported by proof, the 180-day extension expressly provided by that section for conduct knowingly calculated to induce postponement of suit.

142. Plaintiff separately preserves recoupment, setoff, claim-objection defenses, and other defensive rights to the extent they may be asserted against Santander's effort to enforce the obligation even if a particular affirmative damages remedy is determined to be time-barred.

## XI. DAMAGES AND REMEDIES

143. Plaintiff seeks actual economic damages proven by admissible evidence, including amounts paid on or because of the disputed transaction, the economic effect of the $1,466 product, interest

attributable to amounts found improperly financed, and consequential financial losses proximately caused by actionable conduct.

144. Plaintiff seeks restitution, rescission, reformation, declaratory relief, credit against the asserted obligation, setoff or recoupment, and other equitable relief only to the extent authorized by the governing law and supported by the Court's findings.

145. Plaintiff seeks enhanced damages under the Texas DTPA only if the statutory prerequisites for knowing or intentional conduct are proven.

146. Plaintiff seeks mental-anguish damages only to the extent permitted by Tex. Bus. & Com. Code § 17.50 and supported by legally sufficient evidence.

147. Plaintiff seeks taxable costs and any other litigation expenses recoverable by a pro se litigant under applicable law. Plaintiff does not seek an attorney-fee award for his own pro se work.

148. Plaintiff does not plead an arbitrary lump-sum damages figure. The amount of damages will be established from the payment history, transaction accounting, statutory remedies, and other admissible evidence.

## XII. PRESERVATION AND TARGETED DISCOVERY

149. Defendants possess transaction records not available to Plaintiff, including lender applications and resubmissions, underwriting records, funding records, dealer-system records, deal-jacket documents, communications, account notes, e-signature and document metadata, product-enrollment records, and records concerning any purported unwind.

150. Plaintiff specifically seeks preservation of electronically stored information relating to the transaction, including dealer management system data, CRM records, RouteOne/Dealertrack or comparable lender-platform records, emails, text messages, underwriting notes, funding checklists, call recordings, and document images.

151. Targeted discovery should permit the parties and Court to determine the precise funding chronology, what changed between the September 5 Chrysler Capital decision and the eventual funded transaction, whether any genuine unwind request was transmitted, whether any lender actually imposed a first-payment prerequisite, and whether the $1,466 product was included in and material to the final funding package; whether Plaintiff's mother was ever submitted as a proposed co-borrower, to which lenders, on what dates, and with what results; and whether any materially more favorable approval was available but not used.

152. Plaintiff also seeks the dealer economics associated with each material financing option, including lender buy rate, contract rate, dealer reserve or participation, acquisition fee or discount, advance, down-payment requirement, term, ancillary-product treatment, stipulations, and the reason any available approval was accepted or rejected.

153. Plaintiff pleads these matters to identify the factual issues presented by the existing documents; formal discovery will proceed under Fed. R. Bankr. P. 7026-7037 and applicable Local Rules.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

A. enter judgment on the claims and defenses established by the evidence against Mac Haik and Santander as provided by applicable law;

B. determine the validity and enforceability of the $1,466 ancillary/service-contract obligation and grant appropriate declaratory, restitutionary, reformation, credit, or other relief concerning that charge;

C. award actual damages against Mac Haik in the amount proven at trial on any fraud, DTPA, contract, promissory, or equitable theory sustained by the evidence;

D. award enhanced damages against Mac Haik only to the extent authorized by the Texas DTPA and proven;

E. grant rescission, restitution, reformation, or other equitable relief concerning the retail installment transaction to the extent authorized by governing law;

F. enforce against Santander the claims and defenses preserved by the FTC Holder Rule, subject to the Rule's limitations;

G. allow, reduce, or disallow Santander's proof of claim under 11 U.S.C. § 502 to the extent required by the Court's determination of the underlying transaction, defenses, credits, offsets, and applicable law;

H. determine the validity and extent of Santander's asserted lien and the allowed secured and unsecured portions of Santander's claim through the procedures required by the Bankruptcy Code and Bankruptcy Rules;

**I. award taxable costs and any other relief recoverable by Plaintiff as a pro se litigant; and**

J. grant such other and further relief as the Court determines just and lawful.

**JURY DEMAND (TO THE EXTENT LEGALLY AVAILABLE)**

Plaintiff demands a jury trial on issues so triable to the extent a jury right exists, has not been waived, and the Bankruptcy Court or District Court has authority to conduct the jury trial under applicable law.

Respectfully submitted,

Matt Sargeant SR.

MATTHEW ALLEN SARGEANT, SR.
Plaintiff, Pro Se
4101 Fairview Vista Pt. #327
Orlando, FL 32804
Telephone: 512-413-7955
Email: mortal4life@icloud.com
Date: 9-17-26

## EXHIBIT INDEX

Plaintiff attaches only the following limited exhibits necessary to identify and illustrate the principal documentary allegations in the First Amended Complaint. Plaintiff has preserved the complete text-message thread and additional lender records and will produce them in discovery or as otherwise ordered by the Court.

**Exhibit 1 -** Customer DEAL UNWIND Agreement.

**Exhibit 2 -** Chrysler Capital adverse-action notice dated September 30, 2023, reflecting a September 5, 2023 credit decision on the application submitted through Georgetown Mac Haik Dodge Chrysler Jeep Ltd.

**Exhibit 3 -** Stellantis Financial Services adverse-action notice dated September 18, 2023, Application No. 601217897.

**Exhibit 4 -** Stellantis Financial Services adverse-action notice dated October 2, 2023, Application No. 601219015.

**Exhibit 5 -** Vehicle Service Contract No. 343481260972 reflecting the $1,466 ancillary product and the disputed Tina Cheatham signature.

**Exhibit 6 -** Selected contemporaneous text-message excerpts containing the representations specifically quoted or described in the First Amended Complaint, including the first-payment requirement, the statement that the old deal was "getting completely canceled," the representation that Michael Kinney was working on the replacement transaction, and Austin's statement concerning why the bank transferred the money.

**Exhibit 7** - RouteOne Joint Credit Intention / Credit Application reflecting a September 5, 2023 submission time; included to establish the financing-submission chronology.

**Exhibit 8 -** Title Reassignment; included to establish the title-transfer chronology.

**Exhibit 9 -** Application for Title identifying Chrysler Capital as lienholder; included to establish the lienholder-designation chronology.

**Preserved but not attached:** the complete text-message thread, the remaining lender adverse-action and conditional-credit records, the complete retail installment transaction file, and other documents identified for discovery in the First Amended Complaint.

ENTERED EX 4

Customer DEAL UNWIND Agreement

To Whom It May Concern:

I/We (PRINTED NAME/S) TINA CHEATHAM MATTHEW SARGEANT,

have returned our purchase to GEORGETOWN MAC HAIK DODGE CHRYSLER JEEP RAM.

Any payoff on our trade in or TTL paid to the State is to be refunded back to GEORGETOWN MAC HAIK DODGE CHRYSLER JEEP RAM. Any warranties or aftermarket products included in deal are to be cancelled on the below vehicle.

Yr/Make/Model 2014 DODGE CHALLENGER

Vin: 2C3CDYAG0EH281803

Signature Tina Cheatham

Co-Buyer

Accepted by: Tina Cheatham

Representative of GEORGETOWN MAC HAIK DODGE CHRYSLER JEEP

**If A TRADE IN WAS INVOLVED:** N/A

I/We have taken back possession of our trade in:

*Yr/Make/Model* ________

*Vin:* ________ on Date: ________

*The original loan on this vehicle is to be reinstated. Any mileage put on the purchase unit or work that has been done to the trade in, I acknowledge will be deducted from the down payment funds and any additional fees due.*

Signature

Co-Buyer

Accepted by:

*Representative of GEORGETOWN MAC HAIK DODGE CHRYSLER JEEP*

***GET SIGNATURES ON BROWN POA AND STATEMENT OF FACTS OF ALL PARTIES***

CHRYSLER
CAPITAL
P.O. Box 9118 Temecula, CA 92589-9118

Reference Number:
152501420

09/30/2023

ENTERED
6X12

ADDRESS SERVICE REQUESTED

2039002465 PRESORT PBPS005 <>

MATTHEW SARGEANT
404 RAWHIDE LOOP # 404
ROUND ROCK TX 78681-6928

**Dear MATTHEW SARGEANT,**

Thank you for your recent application for the extension of credit through GEORGETOWN MAC HAIK DODGE CHRYSLER JEEP LTD. After carefully reviewing your application, we regret that we are unable to approve the terms of your credit request. If you would like a statement of specific reasons why your application was denied, please contact us at our address or telephone number shown below within 60 days of the date of this letter. We will provide you with the statement of reasons in writing within 30 days after receiving your request. Please make sure to have your reference number available when you contact us.

Chrysler Capital | P.O. Box 660538 Dallas, TX 75266-9039
Telephone: (877) 219-9672

If we obtained information from a consumer reporting agency as part of our consideration of your application, its name, address and toll-free telephone number is shown below. The consumer-reporting agency played no part in our decision and is unable to supply specific reasons why we have denied credit to you. You have a right under the Fair Credit Reporting Act to know the information contained in your credit file at the consumer-reporting agency.

You also have a right to a free copy of your report from the reporting agency, if you request it no later than 60 days after you receive this notice. In addition, if you find that any information contained in the report you receive is inaccurate or incomplete, you have the right to dispute the matter with the reporting agency. You can find out about the information contained in your file by contacting:

TransUnion, P.O. Box 1000 Chester, PA 19022, and (800) 916-8800
Experian, P.O. Box 2002 Allen, TX 75013, and (888) 397-3742
LexisNexis Risk & Information Analytics Group Inc., P.O. Box 105108 Atlanta, GA 30348-5108, and (866) 312-8076

We also obtained your credit score from TransUnion and used it in making our credit decision. Your credit score is a number that reflects the information in your credit report. Your credit score can change, depending on how the information in your credit report changes.

Your credit score: 508 Date: 09/05/2023

Scores range from a low of 250 to a high of 900
Key factors that adversely affected your credit score:

Derogatory public record or collection filed
Proportion of balances to credit limits on bank/national revolving or other revolving accounts is too high
Too few accounts currently paid as agreed
Time since delinquency is too recent or unknown

If you have any questions regarding your credit score, you should contact TransUnion at P.O. Box 1000 Chester, PA 19022 or (800) 916-8800.

If you have any questions regarding this letter, you should contact us at:
Chrysler Capital | P.O. Box 660538 Dallas, TX 75266-9039
Telephone: (877) 219-9672

STELLANTIS FINANCIAL SERVICES, INC.
5757 WOODWAY DR STE 400
HOUSTON TX 77057-1520
ELECTRONIC SERVICE REQUESTED

ENTERED
EX 3

September 18, 2023

0024120024080452251578681692804---000062Usy95dpkAEA-

MATTHEW SARGEANT
404 RAWHIDE LOOP
ROUND ROCK TX 78681-6928

Application No.: 601217897
Dealer Name: Mac Haik Dodge Chrysler Jeep (Georgetown)

MATTHEW SARGEANT

Thank you for your recent credit application which was submitted to Stellantis Financial Services, Inc. by the above-referenced dealer. Your request was carefully considered, and we regret that we are unable to approve your application at this time, for the following reason(s):

After carefully reviewing your application, we are sorry to advise you that we cannot extend credit to you at this time. If you would like a statement of specific reasons why your application was denied, please contact our Credit Decision Information Office shown below within 60 days of the date of this letter. We will provide you with the statement of reasons within 30 days after receiving your request. Please see below for our contact information.

If we obtained information from a consumer reporting agency as part of our consideration of your application, its name, address, and toll-free telephone number is shown below (if not contained below, then such information was not obtained). The reporting agency played no part in our decision and is unable to supply specific reasons why we have denied credit to you. You have a right under the Fair Credit Reporting Act to know the information contained in your credit file at the consumer reporting agency. You have a right to a free copy of your report from the reporting agency, if you request it no later than 60 days after you receive this notice. In addition, if you find that any information contained in the report you received is inaccurate or incomplete, you have the right to dispute the matter with the reporting agency. You can find out about the information contained in your file by contacting:

Equifax Information Services., LLC
P.O. Box 740241

Atlanta, GA 30374-0241
800-685-1111

62-DFSFS001-AAPBD-04/12/22-000062Usy95dpkAEA-

STELLANTIS FINANCIAL SERVICES, INC.
5757 WOODWAY DR STE 400
HOUSTON TX 77057-1520
ELECTRONIC SERVICE REQUESTED

ENTERED Ex 4

October 2, 2023

00241200240807261378786816928O4—000104v5v2JGF7AMai

MATTHEW SARGEANT
404 RAWHIDE LOOP
ROUND ROCK TX 78681-6928

Application No.: 601219015
Dealer Name: Mac Haik Dodge Chrysler Jeep (Georgetown)

MATTHEW SARGEANT

Thank you for your recent credit application which was submitted to Stellantis Financial Services, Inc. by the above-referenced dealer. Your request was carefully considered, and we regret that we are unable to approve your application at this time, for the following reason(s):

> After carefully reviewing your application, we are sorry to advise you that we cannot extend credit to you at this time. If you would like a statement of specific reasons why your application was denied, please contact our Credit Decision Information Office shown below within 60 days of the date of this letter. We will provide you with the statement of reasons within 30 days after receiving your request. Please see below for our contact information.

If we obtained information from a consumer reporting agency as part of our consideration of your application, its name, address, and toll-free telephone number is shown below (if not contained below, then such information was not obtained). The reporting agency played no part in our decision and is unable to supply specific reasons why we have denied credit to you. You have a right under the Fair Credit Reporting Act to know the information contained in your credit file at the consumer reporting agency. You have a right to a free copy of your report from the reporting agency, if you request it no later than 60 days after you receive this notice. In addition, if you find that any information contained in the report you received is inaccurate or incomplete, you have the right to dispute the matter with the reporting agency. You can find out about the information contained in your file by contacting:

Equifax Information Services., LLC
P.O. Box 740241

Atlanta, GA 30374-0241
800-685-1111

104-DFSFS001-AACB24-04/12/22-000104v5v2JGF7AMai

MAP® MOTORIST ASSISTANCE PLAN

# Vehicle Service Contract

ENTERED

| Contract Number |
|---|
| 343481260972 |

**CONTRACT HOLDER INFORMATION**

**PURCHASER NAME** TINA L CHEATHAM
**ADDRESS** 404 RAWHIDE LOOP
**CITY, STATE, ZIP** ROUND ROCK, TX 78681
**PHONE#** 5123001993
**CO-PURCHASER NAME** MATTHEW SARGEANT
**PURCHASER EMAIL** MATTERS2MUCH2@YAHOO.COM
**CO-PURCHASER EMAIL**

**VEHICLE INFORMATION**

**VIN** 2C3CDYAG0EH281803 **YEAR** 2014 **MAKE** DODGE **MODEL** CHALLENGER

Current Odometer

Vehicle Purchase Price $17,000.00 Vehicle Class

**CONTRACT COVERAGE AND SURCHARGES**

☐ 4 Star Coverage ☐ 3 Star Coverage ☐ 2 Star Coverage ■ Star Coverage

Term Months 24 Term Mileage 30,000

Contract Price $1,466.00

his coverage ends when the month's term selected expires as measured from the Contract Purchase Date or when the mileage of Your Vehicle reaches the otal of the Current Odometer plus the mileage term selected.

**urcharges** (if a box is not marked, then no coverage applies.)

☐ Commercial Use Vehicle
☐ After Point of Sale
☐ Oversized Tires/Lifted Vehicle
☐ Uber/Lyft
☐ Buy Back
☐ Canadian Vehicle

**Deductibles**

☐ $0
☐ $100 Disappearing (must be serviced at selling dealer, otherwise $100 applies.)
■ $100
☐ $200
☐ $500

er point of sale - (Select if contract purchase date is not the same as Vehicle purchase date and Vehicle is not under manufacturer's warranty.)

**SELLER INFORMATION**

**LLER NAME** Mac Haik Chrysler DJR - Georgetown
**DRESS** 5255 IH 35 South
**Y, STATE, ZIP** Georgetown, TX 78626
**ACCOUNT#** 0000034348
**PHONE#** 5129307900

**LIEN HOLDER INFORMATION**

**N HOLDER NAME** CHRYSLER CAPITAL
**DRESS** PO BOX 961272
**Y, STATE, ZIP** FT WORTH, TX 76161
**PHONE#** 8555635635

derstand that the purchase of this Contract is not required in order to purchase or obtain financing for this Vehicle and is ject to verification. My signature below indicates that I have read and agree to all the terms and conditions of this Contract. ddition, if this Service Contract is financed or included in my Lease agreement, I authorize Lien Holder to 1) be listed as payee and receive any refund in the event this Contract is canceled, and 2) cancel this Contract in the event I default on obligation to such Lien Holder.

[signature] 9/6/2023 [signature]

**CUSTOMER SIGNATURE** **CONTRACT PURCHASE DATE** **SELLER'S SIGNATURE**

AP (07 19)

Administered by ENTERPRISE FINANCIAL GROUP, Inc. (EFG)
or one of its affiliated companies (see DEFINITIONS for Your state-specific Administrator)
P.O. Box 167667, Irving TX 75016, 1-800-527-1984, www.efgcompanies.com

[CR082619]

SELLER COPY

6:04

ENTERED EX 61

Austin At Mac Haik

I asked

and he said that the lender is not willing to work with us to unwind the loan anymore because the 1st payment was late.
He said that either a local credit union like UFCU.org
Or, RateGenius.com for refinancing is the only kind of route that we can take to get a new loan with your mom and without Tina on it.
I would check out those websites and give them a call to have them guide you through the process.
Unfortunately we have been at the mercy of the lender and they are no longer

loan

iMessage

ENTERED
Ex 6 2

6:03

Austin At Mac Haik

questions but we can
regroup

Ok thanks austin I allways appreciate your help

Oct 27, 2023 at 7:59 PM

Hey austin FYI, I made the payment yesterday

Oct 30, 2023 at 1:14 PM

Hi Matt, Michael is working on your deal.

We need the exact miles currently on the Challenger please? Thanks

Ok gimme a minute or two

iMessage

6:03

ENTERED EX 63

Austin At Mac Haik

Oct 23, 2023 at 11:43 AM

Hi Matt, the bank called and said that you need to make your 1st payment before they will let us unwind the loan.
The 1st payment was due on the 21st of this month. Please make your first payment asap so we can get Tina off the loan.
Thanks,
Austin

Oct 25, 2023 at 9:53 AM

Hello Matt, did y'all make the first payment yet?
Mike is trying to help

ENTERED
EX 6/4

**Austin At Mac Haik**

Hello Matt, did y'all make the first payment yet?
Mike is trying to help y'all but if you don't make the first payment per the bank, then there is nothing he can do unfortunately.
Let me know please?
Thanks

Oct 25, 2023 at 8:33 PM

Hey austin im just now seeing this and I am making first payment first thing in the morning. I was under the impression that it would be under the new contract that I would make the payment

iMessage

any money that I put

ENTERED EX 65

questio... regroup...

**Austin At Mac Haik**

Ok thanks austin I allways appreciate your help

Oct 27, 2023 at 7:59 PM

Hey austin FYI, I made the payment yesterday

Oct 30, 2023 at 1:14 PM

Hi Matt, Michael is working on your deal.

We need the exact miles currently on the Challenger please? Thanks

Ok gimme a minute or two

+ iMessage

ENTERED EX 6

2

A

Austin At Mac Haik

know?

It

Hello, I am not at the office unfortunately, but as soon as we have the new deal I will definitely let you know!
My understanding is that the old deal is getting completely canceled, and you'll have the car for 3 months and only had to make that 1 payment!
The 2000 down should go toward the new deal.
I'll keep you updated on any news I get as well!
Thanks

Oct 31, 2023 at 5:18 PM

Hey austin I never got or

Message

socket for these after

ENTERED EX 6/7

**Austin At Mac Haik**

Sorry, I can't talk right now.

Ok can I get mark #?

Is anyone at the dealership???

We are closed today unfortunately, but since the bank didn't send us the money we will get it done with your mom on tomorrow!
We definitely still want to sell you the car!
I will call you tomorrow after I talk to Michael!
Thanks again,
Austin

Ok but the first thing

iMessage

the face of the deal to

6:20

ENTERED EX 6/8

was st( **Austin At Mac Haik**

that you are coming by later today to cancel the first deal. Monday he is planing on doing the new deal with your your mom and yourself!
He doesn't really talk too much to be honest.
Things are moving along though!
At least for the time being you aren't paying any interest at all!
Lol
Thanks,
Austin

Sep 24, 2023 at 1:52 PM

Sorry, I can't talk right now.

Ok can I get mark #?

iMessage

RouteOne®

ENTERED EX 7

Credit Application

**Joint Credit Intention Signature**

[X] This is an application for joint credit with another person.

We intend to apply for joint credit.

Applicant: By Tina Cheatham Date 8.6.23

Co-Applicant: By Matt Sargent Date 9-6-23

IMPORTANT INFORMATION ABOUT PROCEDURES FOR OPENING A NEW ACCOUNT -
To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account. What this means for you: When you open an account, we will ask for your name, address, date of birth, and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents.

By signing this application:

I authorize dealer and any finance company, bank or other financial institution to which the dealer submits my application ("you") to investigate my credit and employment history, verify my income, obtain credit reports, and release information about your credit experience with me as the law permits.

I further authorize you to forward my application and all related information to other creditors for evaluation as a method of effectuating my request for credit.

If an account is created, I authorize you to obtain credit reports for the purpose of reviewing or taking collection action on the account, or for other legitimate purposes associated with the account.

**Monitoring, Recording, and Collection Communications**

I agree that you, your affiliates, agents and service providers may monitor and record telephone calls regarding my account to assure the quality of your service or for other reasons. I also expressly consent and agree to you, your affiliates, agents and service providers using written, electronic or verbal means to contact me as the law allows. This consent includes, but is not limited to, contact by manual calling methods, prerecorded or artificial voice messages, text messages, emails and/or automatic telephone dialing systems. I agree you, your affiliates, agents and service providers may do so using any e-mail address or any telephone number I provide, now or in the future, including a number for a cellular phone or other wireless device, regardless of whether I incur charges as a result.

I certify that I have read and agree to the terms of this application and that the information in it is complete and true.

**If you sign this credit application electronically, you intend that process to be your electronic signature on an electronic application, acknowledge receipt of all disclosures provided on the credit application, and give your authorization and consent to the recipient(s) of this application to take the actions identified in the credit application.**

**Credit Application Signature**

Applicant: By Tina Cheatham Date 9.6-23

Co-Applicant: By Matt Sargent Date 9-6-23

# Dealer's Reassignment of Title for a Motor Vehicle

TxDMV

Federal and state law require that you state the mileage upon transfer of ownership. Providing a false statement or failure to complete this form may result in fines and/or imprisonment.

EX8

## Vehicle Information

| Vehicle Identification Number | Year | Make | Body Style | Model |
|---|---|---|---|---|
| C3CDYAG0EH281803 | 2014 | DODG | 2D | CHA |

Title/Document Number: 46322450262 50164

State or Country Where Last Registered: TX

## Reassignment (by Dealer Only)

**Seller**

Dealership Name: MAC HAIK DODGE CHRYSLER JEEP RAM GEORGETOWN
Dealer License Number: P53730

Authorized Agent First Name / Middle Name / Last Name / Suffix (if any)

Address: 5255 S IH 35 City: GEORGETOWN State: TX Zip: 78626

**Purchaser**

First Name (or Entity Name): TINA LANETT CHEATHAM Middle Name / Last Name: MATTHEW ALLEN SARGEANT Suffix (if any)

Entity's Authorized Agent's Name (if applicable) Dealer License Number (if applicable)

Address: 404 RAWHIDE LOOP City: ROUND ROCK State: TX Zip: 78681-6928

I, the above listed seller, certify the vehicle described above is free and clear of all liens, except as noted in the Lien section below, and has been transferred to the purchaser listed above. I, the above listed seller, certify to the best of my knowledge the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:

Odometer Reading (no tenths): 92780

☐ Mileage Exceeds Mechanical Limits
☐ Not Actual Mileage (WARNING – ODOMETER DISCREPANCY)

I am aware of the odometer certification made by the seller/agent.

Signature of Seller/Agent ______ Date: 09/06/2023 Signature of Purchaser/Agent: Tina Cheatham Matt Sargeant Date: 09/06/2023

## Reassignment (by Dealer Only)

**Seller**

Dealership Name / Dealer License Number

Authorized Agent First Name / Middle Name / Last Name / Suffix (if any)

Address / City / State / Zip

**Purchaser**

First Name (or Entity Name) / Middle Name / Last Name / Suffix (if any)

Entity's Authorized Agent's Name (if applicable) / Dealer License Number (if applicable)

Address / City / State / Zip

I, the above listed seller, certify the vehicle described above is free and clear of all liens, except as noted in the Lien section below, and has been transferred to the purchaser listed above. I, the above listed seller, certify to the best of my knowledge the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:

Odometer Reading (no tenths)

☐ Mileage Exceeds Mechanical Limits
☐ Not Actual Mileage (WARNING – ODOMETER DISCREPANCY)

I am aware of the odometer certification made by the seller/agent

Signature of Seller/Agent / Date / Signature of Purchaser/Agent / Date

## Reassignment (by Dealer Only)

**Seller**

Dealership Name / Dealer License Number

Authorized Agent First Name / Middle Name / Last Name / Suffix (if any)

Address / City / State / Zip

**Purchaser**

First Name (or Entity Name) / Middle Name / Last Name / Suffix (if any)

Entity's Authorized Agent's Name (if applicable) / Dealer License Number (if applicable)

Address / City / State / Zip

I, the above listed seller, certify the vehicle described above is free and clear of all liens, except as noted in the Lien section below, and has been transferred to the purchaser listed above. I, the above listed seller, certify to the best of my knowledge the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:

Odometer Reading (no tenths)

☐ Mileage Exceeds Mechanical Limits
☐ Not Actual Mileage (WARNING – ODOMETER DISCREPANCY)

I am aware of the odometer certification made by the seller/agent.

Signature of Seller/Agent / Date / Signature of Purchaser/Agent / Date

## Lien

| Lien Date | Lienholder Name | Mailing Address | City | State | Zip |
|---|---|---|---|---|---|
| 09/06/2023 | CHRYSLER CAPITAL | PO BOX 961272, FT WORTH, TX 76161 | | | |

VTR-41-A (Rev 09/18) THIS DOCUMENT IS VOID IF ALTERED. 28280682

# Application for Texas Title and/or Registration

[illegible] (please check one): ☒ Title & Registration ☐ Title Only ☐ Registration Purposes Only ☐ Nontitle Registration

[illegible] title or registration, check reason: ☐ [illegible] Description ☐ Add/Remove Lien ☐ Other: N/A

ENTERED

TAX OFFICE USE ONLY
County:
Doc #:
☐ SPV ☐ Appraisal Value $

| 1. Vehicle Identification Number | 2. Year | 3. Make | 4. Body Style | 5. Model | 6. Major Color | 7. Minor Color |
|---|---|---|---|---|---|---|
| [illegible]AG0EH281803 | 2014 | DODGE | SD | CHALLENGER | | |

| 8. [illegible] Plate No. | 9. Odometer Reading (no tenths) | 10. This is the Actual Mileage unless the mileage is: | 11. Empty Weight | 12. Carrying Capacity (if any) |
|---|---|---|---|---|
| | 92780 | ☐ Not Actual ☐ Exceeds Mechanical Limits ☐ Exempt | | |

13. Applicant Type: ☒ Individual ☐ Business ☐ Government ☐ Trust ☐ Non-Profit

14. Applicant Photo ID Number or FEIN/EIN: 16023919

15. ID Type: ☒ U.S. Driver License/ID Card (issued by: ______) ☐ Passport (issued by: N/A) ☐ U.S. Citizenship & Immigration Services/DOJ ID ☐ NATO ID ☐ U.S. Military ID ☐ Other Military Status of Forces Photo ID ☐ U.S. Dept. of State ID ☐ U.S. Dept. of Homeland Security ID

| 16. Applicant First Name (or Entity Name) | Middle Name | Last Name | Suffix (if any) |
|---|---|---|---|
| TINA | LANETT | CHEATHAM | |

| 17. Additional Applicant First Name (if applicable) | Middle Name | Last Name | Suffix (if any) |
|---|---|---|---|
| MATTHEW | ALLEN | SARGEANT | |

| 18. Applicant Mailing Address | City | State | Zip | 19. Applicant County of Residence |
|---|---|---|---|---|
| [illegible] RAWHIDE LOOP | ROUND ROCK | TX | 78681-6928 | WILLIAMSON |

| 20. Previous Owner Name (or Entity Name) | City | State | 21. Dealer GDN (if applicable) | 22. Unit No. (if applicable) |
|---|---|---|---|---|
| MAC HAIK CHRYSLER DODGE JEEP RAM | GEORGETOWN | TX | | |

| 23. Renewal Recipient First Name (or Entity Name) (if different) | Middle Name | Last Name | Suffix (if any) |
|---|---|---|---|
| | | | |

| 24. Renewal Notice Mailing Address (if different) | City | State | Zip |
|---|---|---|---|
| | | | |

| 25. Applicant Phone Number (optional) | 26. Email (optional) | 27. Registration Renewal eReminder | 28. Communication Impediment? |
|---|---|---|---|
| [illegible]-1993 | MATTERS2MUCH2@YAHOO.COM | ☐ Yes (Provide Email in #26) | ☐ Yes (Attach Form VTR-216) |

| 29. Vehicle Location Address (if different) | City | State | Zip |
|---|---|---|---|
| | | | |

| 30. Multiple (Additional) Liens | 31. Electronic Title Request | 32. Certified/eTitle Lienholder ID Number (if any) | 33. First Lien Date (if any) |
|---|---|---|---|
| ☐ Yes (Attach Form VTR-267) | ☐ Yes (Cannot check #30) | 36314999301 | 09/06/2023 |

| 34. First Lienholder Name (if any) | Mailing Address | City | State | Zip |
|---|---|---|---|---|
| [illegible] CAPITAL | PO BOX 961272 | FT WORTH | TX | 76161 |

35. Check only if applicable: **MOTOR VEHICLE TAX STATEMENT**
☐ I hold Motor Vehicle Retailer (Rental) Permit No. ______ and will satisfy the minimum tax liability (V.A.T.S., Tax Code §152.046[c])
☐ I am a dealer or lessor and qualify to take the Fair Market Value Deduction (V.A.T.S., Tax Code, §152.002[c]). GDN or Lessor Number ______

36. Trade-in (if any) ☐ Yes (Complete) Year ___ Make ___ Vehicle Identification Number ___
37. Additional Trade-in(s) ☐ Yes

38. Check only if applicable: **SALES AND USE TAX COMPUTATION**

| | | |
|---|---|---|
| ☒ a. Sales Price ($ N/A rebate has been deducted) | $ 17000.00 | ☐ $90 New Resident Tax – (Previous State) ______ |
| b. Less Trade-in Amount, described in Box 36 above | $ ( N/A ) | ☐ $5 Even Trade Tax |
| c. For Dealers/Lessors/Rental ONLY – Fair Market Value Deduction, described in Box 36 above | $ ( N/A ) | ☐ $10 Gift Tax – Attach Comptroller Form 14-317 CHRYCAP<br>☐ $65 Rebuilt Salvage Fee |
| d. Taxable Amount (Item a minus Item b or Item c) | $ 17000.00 | ☐ 2.5% Emissions Fee (Diesel Vehicles 1996 and Older > 14,000 lbs.) N/A |
| e. 6.25% Tax on Taxable Amount (Multiply Item d by .0625) | $ 1062.50 | ☐ 1 % Emissions Fee (Diesel Vehicles 1997 and Newer > 14,000 lbs.) N/A |
| f. Late Tax Payment Penalty ☐ 5% or ☐ 10% | $ N/A | ☐ Exemption claimed under the Motor Vehicle Sales and Use Tax Law because: |
| g. Tax Paid to N/A (STATE) | $ N/A | N/A |
| h. AMOUNT OF TAX AND PENALTY DUE (Item e plus Item f minus Item g) | $ 1062.50 | ☒ $28 or $33 Application Fee for Texas Title (Contact your county tax assessor-collector for the correct fee.) |

**CERTIFICATION – State law makes falsifying information a third degree felony**

I hereby certify all statements in this document are true and correct to the best of my knowledge and belief, and I am eligible for title and/or registration (as applicable).

| Signature | Printed Name | Date |
|---|---|---|
| Signature(s) of Seller(s), Donor(s), or Trader(s) | MAC HAIK CHRYSLER DODGE JEEP RAM<br>Printed Name(s) (Same as Signature(s)) | 09/06/2023 |
| [signature] Signature of Applicant/Owner | TINA LANETT CHEATHAM<br>Printed Name (Same as Signature) | 09/06/2023 |
| [signature] Signature(s) of Additional Applicant(s)/Owner(s) | MATTHEW ALLEN SARGEANT<br>Printed Name(s) (Same as Signature(s)) | 09/06/2023 |